**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

MIKE ACOSTA-RAMOS,

Petitioner,

v. Case No. 8:26-cv-2683-WFJ-SPF

BOB GUALTIERI, *et al*.,

Respondents.
_______________________________________/

# ORDER

Petitioner Mike Acosta-Ramos, an alien in the custody of Immigration and Customs Enforcement ("ICE"), initiated this action by filing a petition for writ of habeas corpus under 28 U.S.C. § 2241. (Doc. 1). Petitioner contends that his detention is unlawful for several reasons. As relief, he seeks an order requiring Respondents to either release him or hold a bond hearing "where the government must prove by clear and convincing evidence that [he] poses a danger or flight risk." (*Id.* at 79-80). Respondents oppose the petition, and Petitioner filed a reply. (Docs. 5, 6). For the reasons stated below, the petition is **DENIED**.

## I. Background

Petitioner is a native of Cuba who was paroled into the United States in May 1980 during the Mariel boatlift. (Doc. 1 at 68). He became a lawful permanent resident in 1988. (Doc. 1-5). In January 2009, Petitioner was convicted of two counts of federal wire fraud and sentenced to 41 months' imprisonment. (Doc. 1-6 at 3; *see also United States v. Acosta*, No. 9:08-cr-80065-DMM (S.D. Fla.)). Eight months after sentencing, the Department of

Homeland Security issued a Notice to Appear, indicating that Petitioner was deportable because he had committed an "aggravated felony" as defined by the Immigration and Nationality Act ("INA"). (Doc. 1-6 at 1, 3). In June 2010, Petitioner was ordered removed to Cuba, but the removal could not be "effected . . . during the period prescribed by law."[1] (Doc. 1-7; Doc. 1-8 at 1). Therefore, in November 2011, Petitioner was allowed to remain in the United States under an order of supervision, which required him to comply with certain conditions, including regular reporting to ICE. (Doc. 1-8).

In November 2025, an Immigration Judge granted Petitioner's motion to reopen his removal proceedings, citing "materially changed circumstances." (Doc. 1-9 at 3). The order granting reopening did not specify these "changed circumstances." (*Id.*) Petitioner represents, however, that he sought reopening based on "substantial changes in Cuba's political and legal landscape since his 2010 removal order, including the enactment of the 2022 Cuban Criminal Penal Code . . . , which dramatically expanded the Cuban government's authority to criminalize dissent, punish perceived disloyalty, and impose significantly harsher penalties on individuals associated with the United States." (Doc. 1 at 69). Although removal proceedings were reopened, the Immigration Judge found that the "prior ruling" that Petitioner had been convicted of "an aggravated felony" remained "law of the case." (Doc. 1-9 at 3). Petitioner is currently seeking various forms of relief in his removal proceedings, including adjustment of status and withholding of removal "under the Convention Against Torture." (Doc. 1 at 69-71).

[1] The record does not disclose why Petitioner could not be removed after entry of the final removal order.

On September 8, 2026, Petitioner was arrested following a traffic stop in Polk County, Florida. (*Id.* at 31). Two days later, ICE assumed custody of Petitioner. (Doc. 5-1). Petitioner brought this habeas action on September 14, 2026, when he was detained at the Pinellas County Jail. (Doc. 1; Doc. 5-1). Five days after filing suit, Petitioner was transferred to an ICE detention facility in Port Isabel, Texas.[2] (Doc. 5-1).

## II. Discussion

Petitioner challenges his detention by immigration authorities on several grounds. He primarily contends that the government violated federal immigration law and his right to due process by "abruptly revok[ing]" his order of supervision and "redetain[ing]" him in September 2026 "without providing any opportunity for meaningful pre-deprivation review." (Doc. 6 at 2). To remedy this alleged violation, Petitioner seeks either immediate release or a bond hearing "where the government must prove by clear and convincing evidence that [he] poses a danger or flight risk." (Doc. 1 at 79-80). For the reasons explained below, the Court concludes that Petitioner's custody is lawful because he is subject to mandatory detention under 8 U.S.C. § 1226(c). Therefore, he is not entitled to the relief he seeks.

---

[2] Respondents correctly concede that this Court retains jurisdiction over the petition because Petitioner "was detained at the Pinellas County Jail" at the time of filing. (Doc. 5 at 2 n.3; *see also Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004) ("[W]hen the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release."); *Gutierrez v. Blanche*, No. 3:26-cv-778-MMH-MCR, 2026 WL 1558902, at *1 n.2 (M.D. Fla. June 2, 2026) ("When Gutierrez filed the Petition, she was detained at Flagler County Jail located within the jurisdiction of the Middle District of Florida. Although she has since been transferred to a facility in El Paso, Texas, this Court retains jurisdiction."); *Elcock v. Streiff*, 554 F. Supp. 2d 1279, 1282 (S.D. Ala. 2008) ("[J]urisdiction attaches upon the initial filing of the § 2241 petition and will not be destroyed by a petitioner's subsequent Government-effectuated transfer and accompanying change in physical custodian. . . .").).

Section 1226 allows the government to detain an alien "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a); *see also Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) ("Section 1226(a) generally governs the process of arresting and detaining . . . aliens pending their removal."). Under § 1226(c), "'[t]he Attorney General shall take into custody any alien' who falls into one of several enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 583 U.S. at 289 (quoting 8 U.S.C. § 1226(c)(1)). "Section 1226(c) mandates detention during removal proceedings for a limited class of deportable aliens—including those convicted of an aggravated felony." *Demore v. Kim*, 538 U.S. 510, 517-18 (2003). The government may release an alien detained under § 1226(c) only if necessary for witness-protection purposes.[3] *See Jennings*, 583 U.S. at 289. Additionally, the Supreme Court has instructed that "(1) due process does not require an initial bond determination for those detained under § 1226(c), and (2) § 1226's text cannot be construed to require a bond hearing after any particular fixed period of detention." *Black v. Decker*, 103 F.4th 133, 142 (2d Cir. 2024); *see also Jennings*, 583 U.S. at 296-97, 303, 311-12; *Demore*, 538 U.S. at 531.

Here, Petitioner's custody is lawful because he is subject to mandatory detention under § 1226(c). Petitioner does not dispute that in January 2009, he was convicted of an aggravated felony—federal wire fraud.[4] (Doc. 6 at 2). And while Petitioner became subject

[3] Petitioner does not contend that the witness-protection exception applies here.

[4] As relevant here, the INA defines "aggravated felony" as an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i). Federal wire fraud plainly involves "fraud or deceit," and the record in Petitioner's criminal case indicates that the loss amount exceeded $6 million. *United States v. Acosta*, No. 9:08-cr-80065-DMM, Doc. 24 at 2; Doc. 30 at 3, 35 (S.D. Fla.). Thus, Petitioner's wire-fraud convictions qualify as aggravated felonies. *See Chiao Fang Ku v. Att'y*

to a final removal order in 2010, his removal proceedings were reopened at his request in November 2025. (Doc. 1-7; Doc. 1-9 at 3). "[T]he grant of a motion to reopen vacates the previous order of deportation or removal and reinstates the previously terminated immigration proceedings." *Bronisz v. Ashcroft*, 378 F.3d 632, 637 (7th Cir. 2004). Therefore, when he was arrested in September 2026, Petitioner was no longer subject to a final removal order. Instead, he was—and remains—subject to mandatory detention under § 1226(c) pending the completion of his removal proceedings. *See, e.g.*, *Saly v. Blanche*, No. 26-cv-225-WMC, 2026 WL 2299502, at *5 (W.D. Wis. Aug. 11, 2026) (holding that, because petitioner's final removal order was "vacated" "when the immigration judge granted petitioner's motion to reopen," petitioner was "back in removal proceedings, with his detention governed by 8 U.S.C. § 1226(c)(1)(B)"); *Enwonwu v. Souza*, No. 17-cv-12555, 2019 WL 13280766, at *2 (D. Mass. Mar. 6, 2019) (finding that, once "the [Board of Immigration Appeals] granted [petitioner's] motion to reopen," his "final removal order was vacated," and § 1226(c) supplied "the authorization for his detention").[5]

---

*Gen. United States of Am.*, 912 F.3d 133, 136 (3d Cir. 2019) (holding that Board of Immigration appeals properly determined that petitioner "had committed an aggravated felony under 8 U.S.C. § 1101(a)(43)(M)(i) because her prior conviction for wire fraud constituted an offense involving fraud or deceit in which the loss to the victims exceeded $10,000").

[5] Petitioner contends that he remains subject to a final removal order because the Immigration Judge reopened removal proceedings only to allow him to seek protection from removal under the Convention Against Torture. (Doc. 6 at 6). A similar argument was rejected in *Vilchez v. Bondi*, No. 25-3234-JWL, 2026 WL 294941 (D. Kan. Feb. 4, 2026). As in *Vilchez*, Petitioner fails to present any basis to depart from "the well-established principle that a final order of removal is vacated when removal proceedings are reopened." *Id.* at *2; *see also Satheeskumar v. Att'y Gen. of U.S.*, 480 F. App'x 121, 123 (3d Cir. 2012) (finding that a grant of a motion to reopen vacates a final removal order "even if reopening is limited to a subset of the alien's original claims").

As a criminal alien subject to mandatory detention under § 1226(c), Petitioner is not entitled to the relief he seeks in this action—immediate release or a bond hearing. As explained above, "due process does not require an initial bond determination for those detained under § 1226(c)," and § 1226(c) does not "require a bond hearing after any particular fixed period of detention." *Black*, 103 F.4th at 142; *see also Morales v. Ripa*, No. 3:25-cv-1605-WWB-PDB, 2026 WL 904679, at *2 (M.D. Fla. Apr. 2, 2026) (noting that "due process does not require a bond determination for a § 1226(c) detention"). To be sure, "detention under § 1226(c) can violate the Due Process Clause if it becomes unreasonably or unjustifiably prolonged with no possibility of a bond hearing." *Gabrius v. Dep't of Homeland Sec.*, No. 24-22680-CIV, 2024 WL 5046042, at *2 (S.D. Fla. Sept. 10, 2024) (internal quotation marks omitted). But Petitioner has been detained for approximately one month—far "short of the time required for such detention to become unreasonable."[6] *Rodriguez Casas v. Warden, Krome N. Processing Ctr.*, No. 1:26-cv-20987, 2026 WL 1238547, at *2 (S.D. Fla. May 6, 2026) (ruling that § 1226(c) detention was not unreasonably prolonged where petitioner had been detained for five months); *see also Lopez v. Warden, S. Det. Ctr.*, No. 2:26-cv-2073-SPC-NPM, 2026 WL 1967960, at *1 (M.D. Fla. July 8, 2026) (holding that petitioner's § 1226(c) detention did "not yet raise due process concerns" because he had been detained for "just under three months").

[6] The relatively short length of Petitioner's detention—approximately one month—distinguishes this case from *Phommavongsa v. Chestnut*, where the alien had been "detained for over six months" before habeas relief was granted. No. 1:25-cv-1852-JLT-CDB, 2026 WL 114468, at *5 (E.D. Cal. Jan. 15, 2026), *adopted as modified by* 2026 WL 258412 (E.D. Cal. Jan. 30, 2026).

Petitioner raises several additional challenges to his detention, but none warrants habeas relief. First, he contends that the government violated its own regulations—specifically 8 C.F.R. §§ 241.4(l) and 241.13(i)—by detaining him without providing notice of the reasons for his detention and a prompt informal interview. (Doc. 1 at 49-52). But those procedures "govern[] detention of noncitizens subject to a final order of removal and beyond the removal period." *Singh v. Mullin*, No. 26-cv-1212-SLP, 2026 WL 2168735, at *4 (W.D. Okla. July 28, 2026). As explained above, Petitioner is no longer subject to a final removal order. Therefore, the notice-and-interview procedures do not apply to him. *See Kham v. Andrews*, No. 1:26-cv-1698-KES-EGC, 2026 WL 2096293, at *2 (E.D. Cal. July 20, 2026) (concluding that, because petitioner's "detention" was "governed by 8 U.S.C. § 1226(c)," the notice-and-interview requirements "no longer" applied to him), *adopted by* 2026 WL 2242876 (E.D. Cal. Aug. 3, 2026).

Second, Petitioner alleges that his Fourth Amendment rights were violated because he was arrested without a warrant, the traffic stop was "unlawfully prolonged," and he was subsequently detained by local officials for over forty-eight hours before ICE assumed custody of him. (Doc. 1 at 21-32). These assertions do not warrant habeas relief. "[T]he only relief available on habeas corpus is immediate release or discharge from the custody complained of, and courts have long recognized that an unlawful arrest, by itself, doesn't warrant release." *Buriev v. Warden, GEO, Broward Transitional Ctr.*, No. 25-cv-60459, 2025 WL 2763202, at *3 (S.D. Fla. Sept. 26, 2025) (citations and internal quotation marks omitted). In other words, "[h]abeas is not a vehicle to redress defects in an initial arrest or raise Fourth Amendment challenges based on the initial facts of detention." *Portillo v.*

*Gualtieri*, No. 8:26-cv-1718-KKM-LSG, 2026 WL 2268476, at *3 (M.D. Fla. Aug. 6, 2026) (internal quotation marks omitted). Because Petitioner's present detention is lawful under § 1226(c), any defects in his arrest and initial detention do not entitle him to immediate release or a bond hearing. *See Mejia v. Warden*, No. 3:26-cv-714-CCB-SJF, 2026 WL 2920325, at *2 (N.D. Ind. Sept. 29, 2026) (holding that, because petitioner was "subject to mandatory detention under 8 U.S.C. § 1226(c)," his "present detention" was lawful, and any failure to "compl[y] with the applicable warrant requirements" did not warrant habeas relief).

Third, Petitioner contends that his access to counsel has been limited at the various facilities to which he has been transferred since his arrest. (Doc. 1 at 35). This allegation is "about the *conditions* of [Petitioner's] confinement, not the *fact* or *duration* of it." *Suarez-Garcia v. Warden Fla. Soft Side S.*, No. 2:26-cv-687-KCD-DNF, 2026 WL 1396082, at *2 (M.D. Fla. May 19, 2026). "And as a matter of well-settled law, habeas corpus is simply not the right tool for that job." *Id.*; *see also Vaz v. Skinner*, 634 F. App'x 778, 781 (11th Cir. 2015) (holding that a "§ 2241 petition is not the appropriate vehicle" for "challeng[ing] . . . conditions of confinement"). Any allegations about unconstitutional conditions of confinement would need to be pursued in a separate civil-rights action.

## III. Conclusion

Accordingly, it is **ORDERED** that Petitioner's petition for writ of habeas corpus, (Doc. 1), is **DENIED**. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment against Petitioner, and close this case.

**DONE** and **ORDERED** in Tampa, Florida, on October 5, 2026.

**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**